UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER LIPSEY, JR,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MEDINA, et al.,<br><br>　　　　Defendants. | **Case No. 1:17-cv-01705-LJO-JLT (PC)**<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**<br><br>**(Doc. 14.)** |

Plaintiff proceeds pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. On February 6, 2018, plaintiff's complaint was dismissed with leave to amend for failure to state a claim. (Doc. 12.) Plaintiff's first amended complaint is before the Court for screening. (Doc. 14.)

**I.     Screening Requirement**

The Court is required to screen complaints brought by inmates seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to

1

state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Prisoners may bring § 1983 claims against individuals acting "under color of state law." See 42 U.S.C. § 1983, 28 U.S.C. § 1915(e) (2)(B)(ii). Under § 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## III. Plaintiff's Allegations

Plaintiff is currently incarcerated at Kern Valley State Prison, but his claims arose at Corcoran State Prison ("CSP"). He brings this action against Defendants (1) Correctional Officer ("CO") Medina, (2) Appeal Coordinator D. Goree, (3) Sergeant Case, (4) Associate Warden R. Godwin, (5) California Department of Corrections and Rehabilitation ("CDCR") Secretary S. Kernan, (6) Captain Gallager, (7) City of Corcoran, (8) "Administrator[s] of Law" Carter and John/Jane Doe, and (9) Timothy Lockwood of the "Division of Administrative Services Regulation and Police Management Branch."

Plaintiff's allegations are separated into four distinct claims, each of which is summarized as follows:

### A. Claim 1

Plaintiff is a self-identified frequent-filer of inmate grievances. As a result, he is familiar with California Code of Regulations, Title 15, § 3084.1's rules regarding inmate appeals, specifically § 3084.1(f), which prohibits inmates from filing more than one non-emergency appeal in a 14-day period.

On January 29, 2017, plaintiff learned that he was going to be transferred to another institution. Concerned about the loss of his personal property, plaintiff submitted an inmate grievance requesting that his property be transferred to him as soon as possible. A portion of this property included legal documents relevant to a wrongful death action filed by plaintiff on behalf of his deceased father.

Defendant D. Goree rejected this grievance by erroneously claiming that plaintiff was abusing the inmate grievance process by filing a second non-emergency appeal within a 14-day period. Because CSP is "notorious[]" for disposing of inmate property, this defendant knew the rejection would likely result in the loss of plaintiff's property.

Plaintiff waited more than 14 days before filing another inmate grievance, but D. Goree rejected this grievance, too, for abuse of the inmate grievance process and threatened to restrict plaintiff's ability to file grievances. When D. Goree rejected yet another grievance, plaintiff requested assistance from his counselor, the building sergeants, the warden, and the third level of the appeals office. His counselor responded, and plaintiff was allowed to file grievances.

D. Goree's conduct violated plaintiff's First Amendment rights and resulted in the intentional infliction of emotional distress. Pursuant to the Bane Act, Warden Kernan and the City of Corcoran (Goree's "supervisors") are also liable under a theory of *respondeat superior* liability.

### B. Claim 2

On March 30, 2017, plaintiff filed an inmate grievance to challenge certain prison regulations regarding the delayed transfer of inmate property. Plaintiff claims these delays deprive inmates of their right to religion and basic needs (e.g., deodorant, legal files, shower shoes, etc.).

3

1 He claims, for example, that he cannot shower without shower shoes for fear of contracting
2 athletes' foot and/or Valley Fever. Without deodorant or toothpaste, he is so embarrassed of his
3 smell that he declines to go to therapy sessions. Without a list of personal addresses, he has been
4 unable to correspond via mail with family. Finally, without his legal files, he is unable to send
5 notice to the courts and cannot request extensions of time. This claim is asserted against Carter,
6 Lockwood, R. Godwin, J. Perez, and Gallager.

### C. Claim 3

Plaintiff's third claim is premised on the failure of various staff members to provide him with a Torah for over a year, including Gallager, Warden Godwin, and J. Perez. Specifically, plaintiff claims Gallager is personally responsible for ensuring that inmates' religious rights are respected. He was aware of plaintiff's request for a Torah but never responded to plaintiff. On March 30, 2017, plaintiff submitted an inmate grievance regarding his personal property that he had not yet received, which included a Torah. This grievance put Warden Godwin on notice of this claim, but again plaintiff did not receive a Torah. On April 28, 2017, plaintiff put J. Perez on notice that he had been waiting over a year to no avail. J. Perez also did not provide plaintiff with a Torah.

### D. Claim 4

In the fourth claim, plaintiff alleges that Medina, Sergeant Case, and R. Godwin conspired to retaliate against plaintiff for filing an inmate grievance and a CDCR 22 form. This retaliation took the form of throwing away plaintiff's Jewish calendar, his father's obituary, a wrongful death complaint concerning plaintiff's father, and various other items.

## IV. Discussion

### A. First Amendment Retaliation

Prison inmates have a constitutional right to freedom from retaliation for engaging in activity protected by the First Amendment, including pursuing "'civil rights litigation in the courts.'" Rhodes v. Robinson, 408 F.3d 559, 566 (9th Cir. 2005) (quoting Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995)). A claim of unconstitutional retaliation brought by a prisoner has five elements. First, plaintiff must allege and show that he was engaged in conduct protected by the First Amendment. See Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012). Second, a

4

"plaintiff must claim that the defendant took adverse action against the plaintiff." Id. (citing Rhodes, 408 F.3d at 567). "The adverse action need not be an independent constitutional violation." Id. (citing Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995)). Third, plaintiff must allege and demonstrate a causal connection between the protected conduct and the adverse action. Id. Fourth, the plaintiff must allege and prove either a chilling effect on the exercise of First Amendment rights or some other harm. Id. Finally, the plaintiff must allege that the retaliatory action "'did not advance legitimate goals of the correctional institution.'" Id. (quoting Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985)).

Plaintiff fails to state a retaliation claim against defendant D. Goree. Although the allegations indicate that plaintiff was engaged in conduct protected by the First Amendment, they fail to demonstrate a causal connection between that protected conduct and D. Goree's rejection of plaintiff's grievances. Instead, the rejection of plaintiff's grievances was ostensibly based on his failure to comply with § 3084.1(f) 14-day filing requirement for non-emergency appeals. Even if this was erroneous, any ulterior motive identified by plaintiff—that D. Goree wanted plaintiff to lose his property or that he or she wanted to set plaintiff up – is mere speculation and lacks any basis in fact. This claim must therefore be dismissed, as must plaintiff's claims against any other defendants based on these facts.

### B. Processing of Inmate Grievance

Liberally construing the amended pleading, plaintiff may be asserting a claim based on D. Goree's processing of his inmate grievances. Prisoners, however, do not have "a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Prison officials are not required under federal law to process inmate grievances in any specific way. Plaintiff's claims that D. Goree denied or refused to process his grievances do not state a cognizable claim for a violation of his due process rights because there is no right to a particular grievance process or response. See, e.g., Towner v. Knowles, 2009 WL 4281999, at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff failed to state claims that would indicate a deprivation of his federal rights after defendant allegedly screened out his inmate appeals without any basis); Williams v. Cate, 2009 WL 3789597,

at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims."). Accordingly, plaintiff's claim that D. Goree or any other defendant interfered with, denied, or failed to process his grievances is non-cognizable as a matter of law, and must be dismissed without leave to amend.

### C. Conditions of Confinement

Plaintiff's second set of allegations appear to assert an Eighth Amendment conditions of confinement claim. The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and quotations omitted); see e.g. Gee v. Estes, 829 F.2d 1005, 1006 (10th Cir. 1987) (Eighth Amendment claim established by allegations that prisoner was placed naked in a lice-infested cell with no blankets in below forty-degree temperatures, denied food or served dirty food, and left with his head in excrement while having a seizure); McCray v. Burrell, 516 F.2d 357, 366-69 (4th Cir. 1974) (prisoner placed naked in bare, concrete, "mental observation" cell with excrement-encrusted pit toilet for 48 hours after he allegedly set fire to his cell; prisoner had no bedding, sink, washing facilities, or personal hygiene items, and he was not seen by a doctor until after he was released), cert. denied, 426 U.S. 471 (1976); Gates v. Collier, 501 F.2d 1291, 1302 (5th Cir. 1974) (punishment of prisoner by confinement in small, dirty cell without light, hygienic materials, adequate food, heat; prisoner also was punished through administration of milk of magnesia); LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972) (prisoner confined for five days in strip cell with only a pit toilet and without light, a sink, or other washing facilities), cert. denied, 414 U.S. 878 (1973).

As with his first attempt to state a conditions of confinement claim, plaintiff's amended allegations fail. First, plaintiff has asserted this claim against several defendants without the necessary facts to support liability. Rather, plaintiff states only that "Carter and his/her supervisor fashioned rules that allowed R. Godwin, J. Perez, and Gallager to completely disregard all inmates'

rights to religion and basic needs….” First Am. Compl. at 7. These vague and conclusory allegations are insufficient to state a claim. Second, of the several examples identified by plaintiff in support of this claim, none withstand screening. For instance, while the Ninth Circuit has held that inmates have the right to personal hygiene supplies, see Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996), plaintiff does not claim that he was not issued or was unable to obtain personal hygiene supplies at the canteen upon his transfer to a new institution; he claims only that, at unspecified times and at unspecified institutions, he has not been able to access his own items for sometimes up to 6-8 weeks. As plaintiff was previously informed, a temporary denial of his personal items does not constitute a conditions of confinement claim, especially if plaintiff has other means of obtaining said items and/or the deprivation does not deny him the minimal civilized measure of life's necessities.

**D.  Correspondence via Mail**

Plaintiff asserts that the aforementioned "policy" of delayed receipt of personal property has impacted his ability to communicate via mail with family members because he does not have access to their home addresses. While plaintiff claims he was unable to write letters to family members to tell them where he had been transferred, he does not allege that he was denied all forms of communication with them, such as telephone access or personal visits. See, e.g., Valdez v. Rosenbaum, 302 F.3d 1039, 1048-49 (9th Cir. 2002) ("Valdez had alternative means of exercising his right to communicate with persons outside the prison walls. He could receive visitors at the jail …. He could also communicate … by telephone ….") Accordingly, he fails to state a claim.

**E.  Freedom of Religion**

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend I. The United States Court of Appeals for the Ninth Circuit summarizes the application of the Free Exercise Clause in a state prison context as follows:

> The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, Everson v. Bd. of Educ. of Ewing Twp., 330 U.S. 1, 8, 67 S.Ct. 504, 91 L.Ed. 711 (1947), "prohibits government from making a law 'prohibiting the free exercise [of religion].'" Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct.

7

> 1079, 31 L.Ed.2d 263 (1972) (per curiam) (alteration in original). The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. See, e.g., O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); Cruz, 405 U.S. at 322, 92 S.Ct. 1079. A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration. O'Lone, 482 U.S. at 348, 107 S.Ct. 2400.

Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013).

"To prevail on their Free Exercise claim, Plaintiffs must allege facts plausibly showing that the government denied them 'a reasonable opportunity of pursuing [their] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" Hartmann, 707 F.3d at 1122. (alteration in original) (quoting Cruz, 405 U.S. at 322, 92 S.Ct. 1079). To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994); see also Shakur, 514 F.3d 884–85 (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in Malik determines whether the Free Exercise Clause applies). If the inmate makes his initial showing of a sincerely held religious belief, he must establish that prison officials substantially burdened the practice of his religion by preventing him from engaging in conduct that he sincerely believes is consistent with his faith. Shakur, 514 F.3d at 884-85.

Government action substantially burdens the exercise of religion when the action is "oppressive to a significantly great extent." Int'l Church of Foursquare Gospel v. City of San Leandro, 673 F.3d 1059, 1067 (9th Cir. 2011) (citation and internal quotation marks omitted). "That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." Id. (quoting San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)). "A substantial burden exists where the governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. (citation and internal quotation marks omitted).

Plaintiff's allegations are so bare that it is impossible to determine if he states a claim. While he asserts that various defendants were aware of his request for a Torah and did not provide him

with one, he makes no claim that this substantially burdened his exercise of his religion. Additionally, plaintiff does not allege that the failure to provide him with a Torah was an institutional policy and, in fact, suggests otherwise by claiming that others were able to possess the religious book. This claim must also be dismissed.

**F.     Access to Courts**

At several points in the pleading, plaintiff references his legal materials and a wrongful death case involving his deceased father. These allegations can be construed as stating an access to courts claim.

The Supreme Court has held that the right of access to the courts requires prison authorities to provide prisoners with "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis v. Casey, 518 U.S. 343, 354-56 (1996) (limiting this claim to direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions of confinement). Prison officials must, for example, "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). The scope of the right of access is, however, very limited. Prisoners are only entitled to "the minimal help necessary" to file non-frivolous legal claims. Casey, 518 U.S. at 360. The Constitution does not require "that prisoners (literate or illiterate) be able to conduct generalized research, but only that they be able to present their grievances to the courts." Id.

A prisoner alleging a violation of his right of access to the courts must demonstrate that he has suffered "actual injury." Lewis, 518 U.S. at 349–50. "An inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense." Id. at 351. As the Ninth Circuit has held, jail officials are not constitutionally compelled to provide "ideal" access to the courts, and generalized allegations of limited access to phones, law libraries and legal materials are insufficient to satisfy the "actual injury" requirement. Rather, to state an adequate claim for denial of access to the courts, a plaintiff must set forth factual allegations that he suffered "actual prejudice to contemplated or existing litigation, such as "the inability to meet a filing deadline or to present a claim." Nevada Dep't of

Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011). See also Lewis, 518 U.S. at 351 (in order to show actual injury, the inmate "must go one step further and demonstrate that the library or legal assistance program hindered his efforts to pursue a legal claim.") The "actual injury" requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Lewis, 518 U.S. at 353.

Plaintiff has not pleaded that he has suffered any "actual injury" as a result of any alleged policy or practice of denying inmates immediate access to legal materials upon transfer to a new institution. Furthermore, though plaintiff alludes to the loss of an ability to litigate a claim concerning his deceased father, this is not the sort of litigation encompassed by an access to court claim. See Lewis, 518 U.S. at 546.

**G.     Conspiracy**

In the context of conspiracy claims brought pursuant to § 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. California, 497 F.2d 197, 200 (9th Cir. 1974).

A conspiracy claim brought under § 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. V. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers of Am., 865 F.2d at 1541).

Section 1985 proscribes conspiracies to interfere with an individual's civil rights. To state a cause of action under § 1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act done by one of the conspirators in

furtherance of the conspiracy, and (4) a personal injury, property damage, or deprivation f any right or privilege of a citizen of the United States. Gillispie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

The Ninth Circuit has held that a claim under § 1985 must allege specific facts to support the allegation that defendants conspired together. Karim-Panahi, 839 F.2d at 626. A mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985. Id.; Sanchez v. City of Santa Anna, 936 F.2d 1027, 1039 (9th Cir. 1991).

Plaintiff has failed to allege sufficient facts to show that defendants conspired to violate his rights. To state a claim plaintiff must plead facts showing which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights. See Harris v. Roderick, 126 F.3d 1189, 1196 (9th Cir. 1997). Other than a conclusory allegation that the defendants conspired, plaintiff's pleading is devoid of any facts to show such a conspiracy.

**H.     State Law Claims**

In addition to his federal claims, plaintiff brings a state law claim for deliberate infliction of emotional distress. Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

Although the Court may exercise supplemental jurisdiction over state law claims, plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. In this instance, plaintiff fails to state a claim for relief on his federal claims for violations of 42 U.S.C. § 1983. As plaintiff has failed to state any cognizable federal claims in this action, the Court should decline to exercise supplemental jurisdiction over plaintiff's state law cause of action. See 28 U.S.C. § 1367(c)(3).

## V. Leave to Amend

The Court must now determine whether to allow plaintiff leave to further amend. Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely grant leave when justice so requires." Fed. R. Civ. P. 15(a)(2). When determining whether to grant leave to amend, courts weigh certain factors: "undue delay, bad faith or dilatory motive on the part of [the party who wishes to amend a pleading], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment[.]" See Foman v. Davis, 371 U.S. 178, 182 (1962). Although prejudice to the opposing party "carries the greatest weight[,]...a strong showing of any of the remaining Foman factors" can justify the denial of leave to amend. See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

Furthermore, analysis of these factors can overlap. For instance, a party's "repeated failure to cure deficiencies" constitutes "a strong indication that the [party] has no additional facts to plead" and "that any attempt to amend would be futile[.]" See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 988, 1007 (9th Cir. 2009) (internal quotation marks omitted) (upholding dismissal of complaint with prejudice when there were "three iterations of [the] allegations—none of which, according to [the district] court, was sufficient to survive a motion to dismiss"); see also Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir. 2000) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and had discussed with plaintiff the substantive problems with his claims), amended by 234 F.3d 428, overruled on other grounds by Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007); Plumeau v. Sch. Dist. # 40 Cnty. of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile).

In this case, plaintiff complaint was dismissed for failure to state a claim, and he was provided with the relevant legal standards to consider in drafting his amended pleading. His first amended complaint, however, fails to add relevant facts to proceed as to any of his several claims,

1 suggesting that there are no additional facts to plead. Thus, the undersigned finds that amendment would be futile and will recommend that leave to amend be denied.

### VI. Conclusion

Because plaintiff has again failed to state a claim against any of the defendants and has not cured the deficiencies identified in his original complaint, the Court **RECOMMENDS** that this action be dismissed for failure to state a claim.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**November 20, 2018**__              __/s/ Jennifer L. Thurston__
                                                                    UNITED STATES MAGISTRATE JUDGE